IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
Kansas City Division

| | |
|---|---|
| David Hartley and Timothy Delisle, Individually and on behalf of all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 4:18-cv-00267-HFS<br>) |
| Sig Sauer, Inc., | )<br>) |
| Defendant. | )<br>) |

ORDER

This is a proposed class action asserting breach of warranty, consumer protection, and unjust enrichment claims based on an alleged defect in the Model P320 pistol manufactured by Defendant Sig Sauer. Pending before the Court is Defendant Sig Sauer's motion to dismiss plaintiffs' second amended complaint for lack for lack of jurisdiction under Rule 12(b)(2) and failure to state a claim under Rule 12(b)(6). (Doc. 26).

**Background**.

Plaintiffs allege that Sig Sauer's model P320 pistol, as originally designed, lacked a disconnector safety, which "renders the design of the Pistols both defective and unsafe because the Pistols may fire out-of-battery, creating a dangerous and potentially lethal safety issue." (Doc. 19, Par. 1). "Firing out-of-battery" means that the small explosion that causes the bullet to be expelled from the pistol at a high velocity is not contained in the pistol and instead results in the explosion expanding in an uncontrolled direction, potentially causing damage to the firearm or shooter. (Doc. 19, Par. 1, n. 2).

Plaintiffs bring breach of warranty, consumer protection, and unjust enrichment claims based on Sig Sauer's alleged failure to disclose this "dangerous safety defect" and because there were omissions and misstatements in warranties, operating manuals, and marketing materials. Plaintiffs'

1

breach of warranty claim is based on the Limited Lifetime Warranty sold with the Pistol as well as statements in the operating manual and promotional materials provided by Sig Sauer.

The "Limited Lifetime Warranty" provides that the pistols are "manufactured free of defects in material, workmanship and mechanical function," and the warranty lasts "[f]or the lifetime of the original purchaser." (Doc. 19, Par 60). The warranty promises to correct any "defect in the firearm for the original purchaser by repair, adjustment or replacement . . . with the same or comparable quality components . . . provided however that the firearm is returned . . . to Sig Sauer." (Doc. 19, Par. 60). Promotional materials of Sig Sauer advertise the pistols as "safe," "safer than other firearms," and as "meeting or exceeding all U.S. gun standards." (Doc. 19, Pars. 2,5,48,49,57,58,105).

Plaintiffs also allege another defect with the pistol related to the disconnector safety. That is, that the triggers were designed to be heavy, and the force needed to pull the trigger is light, and because of this, the pistols can fire if unintentionally dropped. (Doc. 19, Pars. 48, 64). Because of this, in August of 2017, Sig Sauer began a "Voluntary Upgrade" to address the trigger issue. (Doc. 19, Par. 5). Sig Sauer explained to its customers that "recent events indicate that dropping the P320 beyond U.S. standards for safety may cause an unintentional discharge." (Doc. 19, Par. 62). When customers sent in their pistol for the Voluntary Upgrade, plaintiffs allege that Sig Sauer not only fixed the trigger pull defect but also added a mechanical disconnector, without notifying customers of the disconnector safety problem. (Doc. 19. Par. 64). Plaintiffs allege that Sig Sauer failed to tell consumers that the pistols did not have a disconnector safety and could fire out-of-battery, and instead, represented that the current model is safe: "THE P320 meets and exceeds all US safety standards. However, mechanical safeties are designed to augment, not replace safe handling practices. Careless and improper handling of any firearm can result in an unintentional discharge." (Doc. 19, Par. 5). Plaintiffs allege that some customers who participated in the Voluntary Upgrade are still experiencing out-of-battery events, and that Sig Sauer has not corrected the underlying problem and continues to conceal the defect from consumers. (Doc. 19, Pars. 65, 72).

2

Plaintiff David Hartley lives in Missouri and purchased his model P320 pistol in Missouri. (Doc. 19, Par. 7-8). He alleges that the pistol in its original condition did not contain a disconnector safety, that he was unaware that his Pistol could fire out-of-battery due to a lack of a disconnector safety, and that he would not have purchased the pistol or paid less for it had he known about the defective nature of the pistol. (Doc. 19, Pars. 10-13).

Plaintiff Tim Delisle lives in Illinois and purchased his model P320 in Illinois. (Doc. 19, Par. 14). He alleges that he experienced an out-of-battery event in April 2017 while shooting his pistol, and that although he returned the pistol to Sig Sauer for repairs under the warranty, Sig Sauer falsely blamed him for the problem and charged him for the repair. (Doc. 19, Pars. 19-22). Delisle alleges that he experienced another out-of-battery event in December of 2017. Although Sig Sauer instructed him to send the pistol back for repairs and an upgrade, he did not, and has kept the non-working pistol. (Doc. 19, Par. 23-24). Plaintiffs allege that Sig Sauer learned of the alleged defect as early as April of 2017 when plaintiff Delisle returned his pistol for repair and may have learned of the alleged defect earlier from other potential customers. (Doc. 19, Par. 54-56).

Plaintiffs' claims can be categorized into those brought on behalf of nationwide classes and those brought on behalf of state-specific sub-classes. Plaintiffs allege three claims on behalf of the purported nationwide classes: (1) Magnuson-Moss Warranty Act (Count I); (2) Missouri Merchandising Practices Act (Count II); (3) unjust enrichment brought under Missouri law (Count III).

Plaintiffs allege four claims on behalf of the state-specific subclasses: (1) violation of the Missouri Merchandising Practices Act on behalf of the Missouri-only sub-class (Count II); (2) unjust enrichment on behalf of the Missouri-only sub-class (Count III), (3) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act on behalf of the Illinois sub-class (Count IV) and, (4) violations of 48 states' consumer protection statutes (excluding Missouri and Illinois) on behalf of class members in each of those states (Count V).

Defendant has filed a motion to dismiss Plaintiffs' Second Amended Complaint arguing dismissal is required for multiple reasons. (Doc. 26, 27). First, Defendant argues that Sig Sauer is not

subject to personal jurisdiction in Missouri for class members' claims with no connection to Missouri ("non-resident claims"). (Counts I, II, III, IV, and V).  Second, defendant argues that Plaintiffs lack standing to represent consumers in the 48 states where they do not reside and that the conglomerate consumer protection claims alleged in Count V should be dismissed.  Third, Defendant argues that the express warranty claims, the Missouri and Illinois consumer protection claims, and the unjust enrichment claim should all be dismissed for failure to state a cause of action (Counts I, II, III, IV).  Finally, defendant argues that the plaintiffs' request for injunctive relief should be dismissed for lack of Article III standing.  The Court will address these arguments, in turn, below.

**Legal Standard**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (*quoting* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (internal citations omitted); Zink v. Lombardi, 783 F.3d 1089, 1098 (8th Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ash v. Anderson Merchs., LLC, 799 F.3d 957, 960 (8th Cir. 2015) (quoting Iqbal, 556 U.S. at 678) (internal quotations omitted).

The Court must accept all facts alleged in the complaint as true when deciding a motion to dismiss. *See* Data Mfg., Inc. v. United Parcel Service, Inc., 557 F.3d 849, 851 (8th Cir. 2009) (noting "[t]he factual allegations of a complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable"). However, allegations that are "legal conclusions or formulaic recitation of the elements of a cause of action ... may properly be set aside." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Iqbal, 556 U.S. at 677) (internal citations omitted).

**Jurisdiction.**

Defendant first argues that the claims brought by class members with no connection to Missouri (including all claims brought by Illinois plaintiff Delisle) must be dismissed because Sig Sauer is not subject to personal jurisdiction in Missouri for those claims suffered by the non-resident plaintiffs. A complaint is not required to include facts alleging personal jurisdiction, but when a defendant moves to dismiss under Rule 12(b)(2) a plaintiff must make prima facie showing of personal jurisdiction. Epps v. Stewart Info. Servs. Corp, 327 F.3d 642, 647 (8th Cir. 2003).

The Due Process clause limits the power of courts to render judgments over nonresident defendants; personal jurisdiction arises only when the defendant has "certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S 310, 316 (1945). Although physical presence in the forum is not required the defendant must have sufficient minimum contacts such that it "should reasonably anticipate being haled into court there." Burger King Corp. v Rudzewicz, 471 U.S. 462 (1985). There are two types of personal jurisdiction: general jurisdiction (also referred to as "all-purpose jurisdiction), and specific jurisdiction (also referred to as case-linked jurisdiction). Bristol-Myers Squibb Co. v. Superior Court, 137 S. Ct 1773, 1780-81 (2017). Defendant does not challenge this Court's specific jurisdiction over the claims of the Missouri resident who purchased the pistol in Missouri. The challenge is to the claims of the potential non-Missouri class members and Illinois plaintiff Delisle. (Doc. 27, p. 6).

Defendant first argues that plaintiffs cannot show that it is subject to general jurisdiction in Missouri and for support submits an affidavit from its Chief Legal Officer, which provides that Defendant Sig Sauer: (1) is a Delaware corporation with its principal place of business in New Hampshire, (2) did not design, create a marketing strategy for, or manufacture the P320 model in

Missouri; (3) did not maintain an office in Missouri, employ any personnel in Missouri, own any real property in Missouri, or maintain any bank or other financial accounts in Missouri. (Doc. 27-1). Based on these statements, defendant urges that plaintiffs have failed to establish general jurisdiction in Missouri. Although plaintiffs allege in their complaint that defendant is actively doing business in Missouri, transacts business in Missouri, and committed unlawful acts in Missouri, plaintiffs do not contest general jurisdiction in their briefing, and instead, refute defendant's argument as to the application of Bristol Myers, *supra.*

Sig Sauer, relying on Bristol Myers, argues that plaintiffs are unable to establish specific jurisdiction in Missouri for class members claims with no connection to Missouri. "Specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." 137 S.Ct. at 1780 (citations omitted). In Bristol Myers, out-of-state plaintiffs, along with California plaintiffs, alleged state-law claims in mass tort. Id. at 1777. The Court held that it lacked specific personal jurisdiction over the out-of-state defendant drug manufacturer because there was no "affiliation between the forum and the underlying controversy, principally [an] activity or an occurrence that takes place in the forum State." Id. at 1781 (citations omitted). "The mere fact that *other* plaintiffs were harmed [by the defendant] in California does not allow the State to assert specific jurisdiction over the nonresidents' claims." Id. at 1776.

Defendant argues that the jurisdictional inquiry in this case is controlled by Bristol Myers, and this Court has no jurisdiction over Sig Sauer to adjudicate the claims brought by non-residents of Missouri. However, this argument has been soundly rejected by at least three district courts in this circuit. Knotts v. Nissan N. Am. Inc., 2018 WL 4922360, at *11-12 (D. Minn.); Swinter Group Inc. v. Service of Process Agents Inc. 2019 WL 266299, at *2 (E.D. Mo); Harrison v. General Motors Co, 2018 WL 6706697, at 6-7 (W.D. Mo.) These cases all say that the ruling in Bristol Myers applies to mass tort cases, not class actions. This Court follows the lead of Judge Bough in Harrison and "declines to extend Bristol-Myers to federal class actions." Id at * 7. Defendant's motion to dismiss for lack of jurisdiction is therefore denied.

**Standing.**

Defendant Sig Sauer next argues that plaintiffs lack standing to bring the conglomerate consumer protection claims in Count V. Plaintiffs voluntarily withdrew their claims under the consumer protection statues of all states except Missouri and Illinois. (Doc. 32, p. 17). Accordingly, Defendant's motion to dismiss Count V is GRANTED.

**Magnuson-Moss Warranty Claim (MMWA).**

Sig Sauer next argues that Plaintiffs' MMWA claim fails because: (1) Plaintiffs do not adequately plead breach of an express warranty; (2) Plaintiffs' claims are barred because they failed to provide pre-suit notice.

1. **Failure to State a Claim for Breach of Express Warranty.**

The MMWA authorizes a consumer to bring an individual action if the consumer is damaged by failure to comply with a written warranty. 15 U.S.C. § 2310 (d)(1). "The MMWA grants the holder of a limited warranty a federal cause of action for breach of warranty under the applicable state law." Sipe v. Workhorse Custom Chassis, LLC, 572 F.3d 525, 530 (8th Cir. 2009). In Missouri, the elements for breach of an express warranty are: (1) the defendant sold goods to the plaintiff; (2) the seller made a statement of fact about the kind or quality of those goods; (3) the statement of fact was a material factor inducing the buyer to purchase the goods; (4) the goods did not conform to that statement of fact; (5) the nonconformity injured the buyer; and (6) the buyer notified the seller of the nonconformity in a timely fashion. Renaissance Leasing, LLC v. Vermeer Mfg. Co., 322 S.W.3d 112, 122 (Mo. 2010). "An express warranty is created by an affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain . . . that the goods shall conform to the affirmation or promise." Id. at 122.

Defendant first argues that plaintiffs have failed to plead a breach of an express warranty because plaintiff's "sole allegation is that Sig Sauer breached the express written warranties stating that Sig Pistols were 'safe' as designed." (Doc. 27, p. 14). Defendant states that safety is not part of the written warranty, and thus, plaintiffs' claim for breach of warranty fails as a matter of law.

The Limited Lifetime Warranty provides, in part: "SIG SAUER warrants that the enclosed firearm was originally manufactured free of defects in material, workmanship and mechanical function." (Doc. 19, p. 23, Par. 60). Plaintiffs include detailed allegations, which accepted as true, support an inference that the pistols were not free of defects in mechanical function – specifically that the that the pistol lacked a disconnector safety, and this defect can plausibly fall within "mechanical function."

Sig Sauer emphasizes that plaintiffs' key allegation is that the pistol is defectively designed, that SIG Sauer's limited warranty does not cover design defects, and that the Eighth Circuit has ruled that similar warranty language does not extend to design defects. Bruce Martin Constr. Inc. v CTB, Inc., 735 F.3d 750 (8th Cir. 2014). In Bruce Martin Construction, the Eighth Circuit considered whether defendants were entitled to summary judgment on a breach of an express warranty claim. In that case, the manufacturer's warranty warranted against "all defects in material and workmanship," and did not include a warranty as to "mechanical function" like the warranty here. *Accord* Nelson v. Nissan, N. Am. Inc, 2014 WL 7331075 (D.N.J. 2014) (design defect claims do not fall within the scope of an express warranty against defects in materials and workmanship).

In this case, the written warranty is broader and provides protection beyond "defects in material and workmanship." See also Johnsen v. Honeywell Int'l, Inc., 2015 WL 631361 (E.D. Mo.) (warranty that product will be "free from defect" survived motion to dismiss). The Limited Lifetime Warranty here provides that the pistol "was originally manufactured free of defects in material, workmanship <u>and</u> mechanical function." (Doc. 19, p. 23) (emphasis added). Viewing the allegations most favorably to plaintiffs, as we must, the alleged lack of a disconnector safety fall within the purview of "mechanical function," and thus, the written warranty may apply.

Defendant's also argue that the breach of express warranty fails because plaintiffs have not alleged facts to indicate that they saw or read the Limited Warranty or that they were induced to buy the pistol because of that warranty. See Renaissance Leasing, 322 S.W.3d at 122; Hope v Nissan N. Am Inc., 353 S.W.3d 68, 86 (Mo.Ct.App. 2011); In re Bisphenol Polycarbonate Plastic Prod. Liab.Litig., 687 F.Supp.2d 897 (W.D. Mo). Renaissance Leasing concerns the assignment of a warranty, and the other two cases consider whether statements in a catalogue, brochure, or advertisement may form the basis for a breach of warranty claim. Here, the pistol was sold with a written warranty and thus, the written warranty became part of the sales contract. *See e.g.* Walker v. Woolbright Motors, Inc., 620 S.W.2d 451, 453 (1981) ("where a contract is reduced to writing and the warranty is one of its terms, it is presumed that the buyer relied on the warranty when he purchased the goods"); Interco Inc. v. Randustrial Corp., 533 S.W.2d 257 (Mo. App. 1976) (no reliance required on warranty part of basis of bargain).

However, to the extent that plaintiffs' breach of warranty claim is based on advertisements, the operating manual, or other materials, a comment is in order. The amended complaint includes statements from the pistol's operating manual and promotional materials. (Doc. 19, Par. 57- 59, 71). Plaintiffs allege in their MMWA Act claim that "Defendant issued written warranties . . . which expressly warranted that the Sig Pistols could safely be used for the intended purpose." (Doc. 19, Par. 90). Plaintiffs also argue in their brief that "a brochure, catalogue or advertisement may constitute an express warranty" and then cite several statements which they contend constitute express warranties. (Doc. 32, p. 13 *citing* Interco v. Randustrial Corp. 553 S.W.2d 257 (Mo. App. 1976)). Because whether a brochure, catalogue, or advertisement constitutes an express warranty under either Missouri or Illinois law is subject to different considerations, pleading with more particularity is required. Plaintiffs must identify the statements from brochures, catalogues or advertisement that form the basis for their claims of an express warranty, and must also identify, with as much particularity as possible, their reliance on these statements. As noted in In re BPA Litigation, 687 F.Supp.2d at 903, even if identification of the statements allegedly forming express warranties was not required by the pleading

9

rules, such identification is eventually necessary as part of Plaintiffs Rule 26 disclosures and issues surrounding class certification.[1]

**2. Pre-Suit Notice.**

Defendant next argues that plaintiffs' express warranty claims are barred by their failure to provide pre-suit notice. A "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach," and if they fail to do so they are barred from any remedy." Mo. Rev. Stat. § 400.2-607(3)(a). Defendant points out that plaintiff Hartley did not allege that he provided any notice to SIG Sauer of any problem with his pistol, and furthermore, plaintiff Hartley's breach of express warranty claim should be dismissed because he has not alleged any defect has manifested in the pistol. (Doc. 27, p. 17).

Plaintiffs concede that Hartley did not give pre-suit notice of his claims, "and may not pursue an express warranty claim under the Missouri UCC." (Doc. 32, p. 15). Thus, to the extent Count I is based on violations of Missouri warranty law, those claims are dismissed without prejudice for failure to allege pre-suit notice. *See* Sipe, 572 F.3d at 530 (MMWA claim requires an underlying state-law breach of warranty claim). However, plaintiff Delisle alleged notice to Sig Sauer in April of 2017. (Doc. 19, Par. 19-20).

Similar considerations apply to defendant's argument that the MMWA count should be dismissed because plaintiffs failed allege that they complied with the warranty by returning the pistols for repair or replacement. Like presuit notice, there are no allegations that Plaintiff Hartley returned the pistol to Sig Sauer as required under the written warranty. Plaintiff Delisle, however, alleged that he

---

[1] In a footnote, Defendants also argue that the MMWA claim should be dismissed on grounds of mootness because SIG Sauer implemented the "Voluntary Upgrade" and is providing free upgrades for the model P320 pistols which includes adding a mechanical disconnector. (Doc. 27, p.15). Any argument as to mootness is more appropriate on a motion for summary judgment after supplying evidence as to the upgrade program. Furthermore, the Court notes that this case is different in several respects from Hadley v. Chrysler Group LLC, 2014 WL 988962 (E.D. Mich.), relied on by defendant because plaintiffs here allege that the defect has not been cured by the Voluntary Upgrade. (Doc. 19, Par. 70).

"presented his pistol to Defendant for warranty repairs." (Doc. 19, Par. 22). This is sufficient to support presuit notice and compliance with the warranty return requirement. That he did not return the pistol a second time is not fatal on a motion to dismiss.

**Consumer Protection Claims Under Missouri Law (Count II) and Illinois Law (Count IV).**

Defendant argues that the Missouri and Illinois consumer protection claims should be dismissed because plaintiffs have failed to identify with particularity any misrepresentations made to them or allege a false representation.

To successfully present a claim under the Missouri statute, a plaintiff must allege that she (1) purchased merchandise from the defendant; (2) for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of defendant's use of one of the methods, acts or practices declared unlawful by the Act. See Mo.Rev.Stat. § 407.025.1. Those unlawful methods, acts or practices include "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo.Rev.Stat. § 407.020.1. The Illinois Consumer Fraud and Deceptive Business Practices Act is similar. See 815 ILCS 505/1 et. seq.[2]

Defendant argues that plaintiffs have failed to allege any false representation, comparing the allegations with those found insufficient in Pollard v. Remington Arms Co. LLC, 2013 WL 3039797 (W.D. Mo). In that case, the district court dismissed plaintiffs' MMPA claims that certain Remington rifles were defective despite representations that the rifles were "trusted, safe, and reliable and free from defects in materials and workmanship" because there was no allegation that the plaintiff had "ever saw, heard, or was otherwise aware of any of [the] alleged misrepresentations." Id. Plaintiffs here are relying on more than false statements in advertising and may be able to maintain an action under the

---

[2] The parties largely confine their arguments to the Missouri Act, which appears substantially similar to the Illinois Act.

MMPA based on the allegedly defective nature of the pistols and the alleged false claims and omissions in the warranty. *See* Johnsen v. Honeywell Intern, 2015 WL 631361 at * 10 (E.D. Mo.). Cf. Williams v. United Technologies Corp., 2015 WL 7738370 (W.D. Mo) (concluding plaintiffs failed to allege a misrepresentation or unfair practice associated with limited warranty and advertisements associated with conditioner).

Defendant's argument that its statements are not actionable and they constitute "mere puffery" is similarly premature at the motion to dismiss stage in light of the detailed allegations provided by plaintiffs. "[I]f the evaluation of whether images constitute puffery depends on what a reasonable consumer would understand, then a court must consider extrinsic evidence of consumer impact. As a result, claims falling under this definition of puffery are "likely generally improper for resolution on a motion to dismiss." Blue Buffalo Co. v. Nestle Purina Petcare Co., 2015 WL 3645262, at * 6 (E.D. Mo.). As plaintiffs point out, defendant's representation that the pistols "meet and exceed U.S. Safety standards" is a factual claim that can be proven or disproven, and therefore, may not necessarily be inactionable puffery. American Italian Pasta Co. v. New World Pasta Co., 371 F.3d 387, 391 (8th Cir. 2004) (explaining difference between puffery and statements of fact).

**Duty to disclose.**

Defendant argues that plaintiffs' claims based on omission[3] should be dismissed because plaintiffs have failed to allege: (1) a special relationship or superior knowledge, and (2) that SIG Sauer knew the concealed facts at the time it sold the P320 pistol.

Under Missouri law, silence can amount to an implied misrepresentation only if the law imposes a duty to disclose. Hess v. Chase Manhattan Bank, 220 S.W.3d 758, 765 (Mo. 2007). "A duty to disclose arises either where there is a relationship of trust and confidence between the parties or where one party has superior knowledge of information not within the fair and reasonable reach of the other

---

[3] Only claims of omission contain a scienter requirement. For claims of omission of a material fact under the MMPA, "a greater showing of bad faith is required than for claims based on alleged affirmative representations. Hope v Nissan N. Am., 353 S.W.3d 68, 84 (Mo. Ct. App. 2011).

12

party." Owen v. Gen Motors Corp., 2007 WL 172355, at *4 (W.D. Mo). Similarly, under Illinois law, "a duty to disclose generally arises (1) when defendant owes the plaintiff some fiduciary duty to make full and fair disclosure and fails to correct a misapprehension of a material fact; or 2) when the defendant's acts contribute to plaintiff's misapprehension of a material fact and the defendant intentionally fails to correct plaintiff's misapprehension. DeMaria v. Nissan N. Am. Inc., 2016 WL 374145, at * 9 (N.D. Il.). Because plaintiffs make no claim of a special relationship, defendant argues that plaintiffs are only liable if Defendant has superior knowledge of material facts that were not disclosed. Plaintiffs' allegations with respect to the disconnector safety support an inference of superior knowledge, sufficient to survive a motion to dismiss. See In re BPA Litigation, 687 F.Supp.2d 897, 908 (W.D. Mo.).

Finally, defendant argues that plaint Hartley's pistol has performed its intended purpose and that the only allegation of loss is that the pistol has the "potential" to malfunction in the future. Defendant states that the mere purchase of a product without a manifestation of a defect cannot establish the existence of any legally compensable injury under the MMPA, relying on the Eighth Circuit's ruling in O'Neil v. Simplicity, Inc., 574 F.3d 501, 503 (8th Cir. 2009). Here, plaintiffs allege that the absence of a disconnector safety renders the design defective and unsafe. Plaintiffs do not base their claim on a potential defect, but rather, an inherent defect in the pistols. Similar allegations were considered sufficient in Faltermeier v FCA US LLC, 2016 WL 4771100, at *7 ( W.D. Mo) (distinguishing O'Neil and concluding that representation of Jeep Vehicles as "safe" and "not defective could cause plaintiff to pay more for his car that it was worth because the vehicles all have an inherent defect – an insufficiently protected plastic fuel tank)); *Accord* George v. Omega Flex, Inc, 2018 WL 3559184 (W.D. Mo.).

**Unjust Enrichment Claim.**

Sig Sauer argues that plaintiffs' claim for unjust enrichment must be dismissed because an unjust enrichment claim cannot succeed where the subject matter of the dispute was governed by an express contract. Plaintiffs concede that this is an accurate statement of law (Doc. 32, p.19), but argue that they are entitled to plead alternative claims for relief. "It is generally permissible to pursue

alternative theories at the pleading stage, and courts generally permit unjust enrichment claims to proceed alongside a properly-pled MMPA claim." White v. Just Born, Inc., 2017 WL 3130333, at * 11 (W.D. Mo.).

**Injunctive Relief.**

Finally, Sig Sauer argues that plaintiffs' request for injunctive relief should be dismissed for lack of Article III standing because plaintiffs have made no allegations of future harm. (Doc. 27, p. 23). Because plaintiffs are already on notice of defendant's alleged deceptive behavior and there are no allegations of future harm, plaintiffs lack standing to purse injunctive relief. See e.g. In re Simply Orange Juice, 2017 WL 3142095, at * 6 (W.D. Mo) (injunctive relief inappropriate when plaintiffs on notice of defendant's practices and did not intend to purchase product in future); Frankle v. Best Buy Stores, L.P., 609 F.Supp.2d 841, 849 (D. Minn.) (plaintiff did not plead Article III standing for injunctive relief).

The MMPA expressly provides for injunctive relief, as well as damages and attorney fees, "not only to remedy violations . . . but also to prospectively deter prohibited conduct and protect Missouri citizens." Berry v. Volkswagen Grp. Of America, 397 S.W.3d 425 (Mo.. 2013) (en banc). Whether there is standing to pursue injunctive relief is premature at this motion to dismiss stage. The burden is light at the pleading stage, and "general factual allegations of injury resulting from defendant's conduct may suffice." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Requests for dismissal of similar injunctions have been denied at the motion to dismiss stage. See e.g. White v. Just Born Inc., 2017 WL 3130333, at * 9-10 (W.D. Mo.). Plaintiffs' second amended complaint includes allegations that the defect remains, and that the alleged deceptive practice is ongoing. Accordingly, defendant's motion to dismiss plaintiffs' claim for injunctive relief is denied without prejudice.

Based on the foregoing, Defendant's motion to dismiss is GRANTED in part and DENIED in part. Plaintiffs' MMWA claim brought under Missouri law in Count I is DISMISSED without prejudice.

The claims in Count V are DISMISSED without prejudice. Plaintiffs are granted leave to amend their second amended complaint consistent with this ORDER. As to all other counts, Defendant's motion to dismiss is DENIED. (Doc. 26).

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

March 25, 2019
Kansas City, Missouri

15

Case 4:18-cv-00267-SRB   Document 41   Filed 03/25/19   Page 15 of 15